RECORD NO. 16-2174

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

TREY SIMS,

*Plaintiff-Appellant,*

v.

KENNETH E. LABOWITZ,
Administrator pursuant to Code of Va. sect. 64.2-454
of the Estate of David E. Abbott,

*Defendant-Appellee,*

and

CLAIBORNE RICHARDSON

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

**RESPONSE TO AMICUS BRIEF OF
THE CHILDREN'S JUSTICE FUND AND CHILD USA IN SUPPORT OF THE
PLAINTIFF-APPELLANT TREY SIMS**

Julia B. Judkins
BANCROFT, McGAVIN,
 HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703) 385-1000 (telephone)
E-mail: jjudkins@bmhjlaw.com

*Counsel for Appellee*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

    I.    THE AMICUS BRIEF VIOLATES THE FEDERAL RULES OF APPELLATE PROCEDURE..................................................................1

    II.    THE AMICUS BRIEF LACKS MERIT.....................................................2

CONCLUSION .......................................................................................................9

CERTIFICATE OF SERVICE ..............................................................................10

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Creighton*,
    483 U.S. 635 (1987)..................................................................................6

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) .................................................................................6

*District of Columbia v. Wesby*,
    No. 15-1485, 583 U.S. ___ (2018) ..........................................................6

*Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...................................................................5

*United States v. Banks*,
    556, F.3d 967 (9th Cir. 2009) ..................................................................3

*United States v. Ramirez*,
    21 M.J. 353 (C.A.A.F. 1986)...................................................................3

## STATUTES & RULES

18 U.S.C. § 2251(a) ......................................................................................2
18 U.S.C. § 2256(2) ......................................................................................2
18 U.S.C. § 2256(2)(A)............................................................................2, 3
18 U.S.C. § 2256(2)(B).................................................................................2

Code of Va. § 64.2-454.................................................................................1

Fed. R. App. 29(a)(4)(E)...............................................................................2
Fed. R. App. 29(b)(2)....................................................................................1
Fed. R. App. 29(b)3).....................................................................................1

Appellee Kenneth E. Labowitz, Administrator Pursuant to Code of Va. § 64.2-454 of the Estate of David E. Abbott ("Abbott"), states the following in response to Amicus Brief of the Children's Justice Fund and Child USA in Support of the Plaintiff-Appellant Trey Sims.

## I. THE AMICUS BRIEF VIOLATES THE FEDERAL RULES OF APPELLATE PROCEDURE

Rule 29(b)(2) of the Federal Rules of Appellate Procedure states that an amicus curiae brief may be filed "only by leave of court." On January 9, 2018, the Court issued an Order granting The Children's Justice Fund's[1] ("CJF") Motion to Extend Time to File a Motion to File An Amicus Brief in Support of the Plaintiff-Appellant's Petition for Rehearing and Rehearing *En Banc*. Specifically, the Order extended the time for CJF "to file *a motion* to file an amicus brief . . . accompanied by the proposed amicus brief." (ECF Doc: 54) (emphasis added). It appears CJF and Child USA skipped the step of filing an appropriate motion, and simply filed their amicus brief.

Rule 29(b)(3) requires that the Motion for Leave to File must state (a) the movant's interest; and (b) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case. CJF and Child USA did not file a motion, and while the amicus brief itself includes an interest statement, it

---

[1] The Motion to Extend Time to File a Motion to File an Amicus was filed on behalf of Children's Justice Fund only. Child USA was not a party to that motion, appearing for the first time in this case as a party to the Amicus brief.

1

does not include a statement as to why the matters asserted are relevant to the disposition of the case. Additionally, the brief does not include a statement indicating the information required by Rule 29(a)(4)(E).

## II. THE AMICUS BRIEF LACKS MERIT

Procedural defects aside, the amicus brief does not assist the Court in deciding the issues. Instead of providing original material or material unique to the work and mission of CJF and Child USA or material not previously presented to the Court, the amicus brief merely restates many of the same legal arguments made in Appellant's petition for rehearing and responds to arguments raised in Appellee's Response.

CJF and Child USA repeat Appellant's contention that the Court misstated and/or misapplied Section 2251(a) and Section 2256(2) by applying the definition of "sexually explicit conduct" in the context of "child pornography" under Section 2256(2)(B) instead of the definition under 2256(2)(A). The argument is based on the fact that Section 2251(a) does not actually use the phrase "child pornography." Yet, Count V of the Complaint is titled "Forced Production of Child Pornography" and Plaintiff, throughout the Complaint and other pleadings and at oral argument, has repeatedly made the allegation that Abbott created "child pornography." It is disingenuous to now suggest Plaintiff is not actually making a child pornography claim.

2

The majority of the amicus brief addresses the meaning and application of "masturbation" under Section 2256(2)(A). First, not once does the amicus brief cite or reference the actual allegations in the Complaint. Instead, after outlining various definitions of masturbation, the amicus brief states in conclusory fashion that "Sims was by any definition masturbating by stimulating or manipulating his penis upon instruction by Abbott to achieve an erection." (ECF Doc: 55, Pg. 11.) What the Complaint actually alleges is that while taking the photographs, Abbott "directed Trey to use his hand to manipulate his penis in different ways, presumably to stimulate, or simulate, the erection….." (Compl. ¶¶ 24.)

Second, the various definitions set forth in the amicus brief actually undercut Plaintiff's conclusion that the allegations constitute masturbation under Section 2256(2)(A). For example, in *United States v. Banks*, 556, F.3d 967 (9th Cir. 2009), the Court sets forth in graphic detail a video created by the defendant showing the defendant touching, wiping, holding, rubbing, and massaging a child's penis, scrotum, and anus, bolstered by messages from the Defendant to another pedophile stating that the video depicted the child's erection. The Ninth Circuit explained that various definitions of masturbation "focus primarily on the 'erotic' stimulation of" genitals and that the actions by the Defendant fit the definition. *Id.* at 979. In *United States v. Ramirez*, 21 M.J. 353, 354-55 (C.A.A.F. 1986), the Military Court of Appeals defined masturbation as "self-stimulation of the general organs <u>for the</u>

3

purpose of sexual pleasure" and stated that masturbation involves "the induction of erection and the obtaining of sexual satisfaction." The amicus brief concludes that although definitions vary, "erotic stimulation of the genitals is consistent among the majority of definitions." (ECF Doc: 55, pg. 10.) "Erotic" is defined by Merriam-Webster as "of, devoted to, or tending to arouse sexual love or desire." Hence, explicit or implicit in all of these definitions, and in the facts of the cases cited by CJF and Child USA, is the intent or purpose of sexual gratification or satisfaction.

Here, the facts as alleged in the Complaint do not amount to masturbation as defined by these various sources. It is wholly apparent from the Complaint that the photographs were not intended or designed to elicit a sexual response in the viewer. Rather, express intent of the warrant and the taking of the photographs, as acknowledged by Sims, was "for the express purpose of comparing them to" pictures Plaintiff had sent to his girlfriend. (Compl. ¶ 54.) Moreover, Sims remained flaccid throughout the taking of the photographs. (Compl. ¶ 26.) There was no sexual satisfaction, arousal, or response of any kind.

Sims alleged in the Complaint that asking him to reposition his penis was "to fulfill [Det. Abbott's] and Richardson's intent to have Trey photographed as though masturbating," and "presumably to stimulate, or simulate, the erection that Richardson sought…" (JA 27) (emphasis added). These allegations are conclusory

4

statements, the same type warned against in *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009), and the Court need not accept these "unwarranted inferences, unreasonable conclusions or arguments" as true, and may instead simply consider the facts – that Detective Abbott had Sims reposition his penis with his hand in order to photograph it pursuant to the warrant for the purpose of comparing the photos to those previously sent from Sims' phone by text to his minor aged girlfriend. Absent Sims' conclusions as to why he was required to move his penis, there are insufficient facts to support a claim that this constituted actual or simulated masturbation.

Finally, the amicus brief raises the issue of qualified immunity. It is not clear whether CJF and Child USA are attempting to use this argument in support of the child pornography issue, or in opposition to Abbott's separately filed Petition for Rehearing *En Banc* as to the Panel's sovereign immunity ruling. The Panel's decision to uphold the dismissal of the child pornography claim was not based on an exemption or immunity from the statute as a result of Abbott's status, but rather on the basis that the allegations as alleged simply did not constitute child pornography under the statute. The dismissal of Plaintiff's child pornography claim therefore stands despite the Panel's finding of no qualified immunity.

The broader issue of qualified immunity is addressed in Abbott's separately filed Petition for Rehearing *En Banc*. In summary, Abbott is entitled to qualified

5

immunity because his actions were consistent with directives received from the prosecuting attorney and pursuant to a warrant issued by an independent magistrate. Abbott's conduct did not violate clearly established law. On January 22, 2018, the U.S. Supreme Court revisited the application of this doctrine. In *District of Columbia v. Wesby*, No. 15-1485, 583 U.S. ___ (2018), District of Columbia police officers were investigating a house party featuring a make-shift strip club in the living room, drugs, and alcohol. The officers ultimately arrested the 21 partygoers, <u>without a warrant</u>, for unlawful entry, and they were also charged with disorderly conduct. At the police station, the partygoers were released, and the charges were ultimately dropped.

In a 9-0 decision, the U.S. Supreme Court held that the officers were entitled to qualified immunity. In reviewing the doctrine, the Court reiterated that qualified immunity applies unless the unlawfulness of the officers' conduct was "clearly established at the time," meaning that "at the time of the officer's conduct, the law was 'sufficiently clear' that **every** 'reasonable official would understand that what he is doing' is unlawful. *Wesby*, slip op. at 13 (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). The Court continued its explanation of "clearly established":

6

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter* v. *Bryant*, 502 U. S. 224, 228 (1991) (*per curiam*), which means it is dictated by "controlling authority" or "**a robust 'consensus of cases of persuasive authority**,'" *al-Kidd*, *supra*, at 741–742 (quoting *Wilson* v. *Layne*, 526 U. S. 603, 617 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that **every** reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. See *Reichle*, 566 U. S., at 666. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle **clearly prohibit the officer's conduct in the particular circumstances before him**. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier* v. *Katz*, 533 U. S. 194, 202 (2001). This requires a high "**degree of specificity**." *Mullenix* v. *Luna*, 577 U. S. \_\_\_, \_\_\_ (2015) (*per curiam*) (slip op., at 6). We have repeatedly stressed that **courts must not "define clearly established law at a high level of generality**, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra,* at \_\_\_–\_\_\_ (slip op., at 12–13) (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641.

. . . .

We have stressed that the "specificity" of the rule is "especially important in the Fourth Amendment context." *Mullenix, supra*, at \_\_\_ (slip op., at 5). Probable cause "turn[s] on the assessment of probabilities in particular factual contexts" and **cannot be "reduced to a neat set of legal rules**." *Gates*, 462 U. S., at 232. It is "incapable of precise definition or quantification into percentages." *Pringle*, 540 U. S., at 371. Given its imprecise

7

> nature, officers will often find it difficult to know how the general standard of probable cause applies in "the precise situation encountered." *Ziglar* v. *Abbasi*, 582 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 28). Thus, **we have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment**." *White* v. *Pauly*, 580 U. S. \_\_\_, \_\_\_ (2017) (*per curiam*) (slip op., at 6); *e.g., Plumhoff, supra,* at \_\_\_. While there does not have to be "a case directly on point," existing precedent must place the lawfulness of the particular arrest "beyond debate." *al-Kidd*, *supra*, at 741. Of course, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Brosseau* v. *Haugen*, 543 U. S. 194, 199 (2004) (*per curiam*). **But "a body of relevant case law" is usually necessary to "'clearly establish' the answer" with respect to probable cause.** *Ibid.*

*Id.* at slip op. 13-15 (emphasis added).

Unlike in *Wesby* where the officers made their arrests without warrants, here Abbott was acting both at the direction of the prosecuting attorney and pursuant to a validly issued warrant by an independent magistrate. It cannot fairly be concluded that <u>every</u> reasonable officer would ignore the directive and choose to disobey the warrant. There is no "case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." There is no "legal principal clearly prohibiting the officer's conduct in the particular circumstances before [Abbott]." There is no "robust consensus of cases of persuasive authority" and no "body of relevant case law" requiring Abbott to disobey the search warrant that was obtained on the advice and direction of an

8

assistant commonwealth's attorney and properly issued by a neutral magistrate. Abbott was entitled to qualified immunity, and the case should be dismissed in its entirety.

## CONCLUSION

The Court has not granted leave for the Children's Justice Fund and Child USA to file an amicus brief. To the extent the amicus curiae's filing is treated as a motion for leave to file an amicus brief, the Court should deny the motion for the reasons set forth above.

Respectfully submitted,

Julia B. Judkins

_____/s/_____
Julia B. Judkins, VSB No. 22597
BANCROFT, McGAVIN, HORVATH &
    JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703) 385-1000 Telephone
(703) 385-1555 Facsimile
jjudkins@bmhjlaw.com
*Counsel for Appellee*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 30th day of January, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Victor M. Glasberg, VSB# 16184
Maxwell C. Sokol, VSB # 89589
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA 22314
(703) 684-1000 (telephone)
(703) 684-1104 (facsimile)
vmg@robinhoodesq.com
msokol@robinhoodesq.com
*Counsel for Appellant*

                                        /s/
                            Julia B. Judkins, VSB No. 22597